UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**RANDOLPH B. FRANCIS,**
    **- Plaintiff**

    **v.**                                **CIVIL NO. 3:09-CV-1826 (VLB) (TPS)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION,**
    **- Defendant**

## MAGISTRATE JUDGE'S OPINION

Pursuant to 42 U.S.C. § 405 (g), the plaintiff, Randolph B. Francis, seeks review of the final decision of the defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits and supplemental security income. For the reasons set forth below, the plaintiff's motion to reverse the Commissioner's decision (Dkt. #12) should be DENIED and the Commissioner's motion to affirm (Dkt. #15) should be GRANTED. 28 U.S.C. § 636 (b).

The plaintiff alleges that he became disabled on June 30, 2007, at age 49. After the plaintiff's application for benefits was denied, he requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Marlene W. Heiser held a hearing, which consisted of testimony by the plaintiff and a vocational expert, on December 16, 2008. (Tr. 319-56) The ALJ then issued a decision on June 5, 2009, finding that the plaintiff was not disabled. (Tr. 7-17) On September 11, 2009, the Commissioner's Decision Review

Board notified the plaintiff that it had failed to complete its review of the ALJ's decision within the required 90 days. (Tr. 4-6) The ALJ's decision thus became final, and the plaintiff filed the present case.

The ALJ must apply a five-step sequential evaluation process to each application for disability benefits. See 20 C.F.R. §§ 404.1520 & 416.920. First, the ALJ determines whether the claimant is employed. If the claimant is unemployed, the ALJ proceeds to the second step to determine whether the claimant has a severe impairment preventing him from working. If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment is equivalent to an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant's impairment meets or equals a listed impairment, the claimant is disabled. However, if the claimant does not have a listed impairment, the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. If the claimant cannot perform his past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available in the national economy in light of the claimant's RFC, age, education, and work experience. The claimant is entitled to disability benefits only if he is unable to perform other such work. The claimant bears the burden of proof as to the first four

steps, while the Commissioner bears the burden of proof as to the fifth step. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

In the present case, the ALJ determined that the plaintiff was unemployed and that he had the severe impairment of "major depressive disorder." (Tr. 12) The ALJ then determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. (Tr. 13-14) The ALJ found that the plaintiff had the RFC "to perform a full range of work at all exertional levels. However, he can perform only simple, routine, repetitive tasks involving short, simple instructions in an environment involving few workplace changes and limited contact with others." (Tr. 14-15) Given that RFC, the ALJ determined that the plaintiff could not perform his past relevant work as a deliveryman and salesman. (Tr. 15-16) However, the ALJ determined that the plaintiff could perform unskilled jobs such as hand packer, production worker, and production inspector. (Tr. 16-17) The ALJ accordingly concluded that the plaintiff was not disabled.

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. . . . Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).

The plaintiff argues that the ALJ improperly assessed the medical records. The first relevant record is a report dated August 24, 2007 by one of the plaintiff's treating physicians, Dr. Stephen T. O'Brien. Dr. O'Brien indicated that the plaintiff had a depressed mood, was anxious, and had "an obvious problem" "using appropriate coping skills to meet ordinary demands of a work environment," "handling frustration appropriately," "interacting appropriately with others in a work environment," and "respecting/responding appropriately to others in authority." (Tr. 149-50) However, Dr. O'Brien noted that the plaintiff had only "a slight problem" "asking questions or requesting assistance," "getting along with others without distracting them or exhibiting behavioral extremes," "focusing long enough to finish assigned simple activities or tasks," "changing from one simple task to another," "performing basic work activities at a reasonable pace/finishing on time," and "performing work activity on a sustained basis (i.e., 8 [hours] per day, 5 days [per] week)." (Tr. 150) Dr. O'Brien also reported that the plaintiff had "no problem" "taking care of personal hygiene," "caring for physical needs (e.g. dressing, eating)," "using good judgment regarding safety and dangerous circumstances," and "carrying out single-step and multi-step instructions." (Tr. 149-50)

Another treating physician, Dr. Steven Kessler, diagnosed the

4

plaintiff on October 24, 2007 with "major depressive disorder, recurrent with psychotic features," dysthymia, post-traumatic stress disorder, social phobia, paraphilia, and voyeurism. (Tr. 179-80) Dr. Kessler prescribed medication, and by the time of his last treatment note on February 1, 2008, the plaintiff's mood had improved and he was "not really" paranoid any longer. (Tr. 174)

On February 10, 2009, the plaintiff underwent a consultative examination by Dr. Yunus Pothiawala, who then reported that the plaintiff had "clinical conditions suggestive of post-traumatic stress disorder as well as major depressive disorder. The overall severity of his present depression appears to be moderate to severe." (Tr. 315) However, Dr. Pothiawala indicated that the plaintiff's "ability to do work-related activities" was no more than mildly restricted due to his mental impairments. (Tr. 316-18) Dr. Pothiawala also reported that "there were no signs of overt psychosis, such as delusions, hallucinations, looseness of association, or disorganized thinking. There were no active suicidal or homicidal ideations. He seems to present with low self-esteem and was expressing feelings of helplessness. He presented with depressed affect. He was fairly well oriented in all spheres. His sensorium was clear." (Tr. 315) According to Dr. Pothiawala, the plaintiff appeared to be "mildly anxious," was "not that verbal" and "rather slow to respond," and had fair memory and judgment and a decreased attention span. (Tr. 315) The

5

plaintiff told Dr. Pothiawala that his daily activities included walking his dogs, watching television, using the computer, and sometimes going grocery shopping with his wife, but he did not "feel like socializing with people." (Tr. 315)

The plaintiff also received treatment from Mara Reilly, a licensed marriage and family therapist. Reilly reported on September 8, 2007 that the plaintiff had "a very serious problem" "handling frustration appropriately," "interacting appropriately with others in a work environment," and "respecting/responding appropriately to others in authority." (Tr. 153-54) Reilly indicated that the plaintiff had "a serious problem" "using appropriate coping skills to meet ordinary demands of a work environment" and "asking questions or requesting assistance." (Tr. 153-54) Reilly also stated that the plaintiff had "an obvious problem" "performing work activity on a sustained basis (i.e., 8 [hours] per day, 5 days [per] week)." (Tr. 154) On July 3, 2008 and again on January 7, 2009, Reilly wrote: "It appears [that the plaintiff] cannot keep a job due to the [post-traumatic stress disorder] and delusions of persecution impairing his interpersonal skills with coworkers and supervisors." (Tr. 211, 307) Reilly completed a "mental impairment questionnaire" on January 8, 2009 in which she rated the plaintiff "seriously limited, but not precluded" or "unable to meet competitive standards" in 13 of the 16 "mental abilities and aptitudes needed to do unskilled work."

6

(Tr. 310) Reilly also indicated that the plaintiff had marked "difficulties in maintaining social functioning, concentration, persistence or pace" and had three "episodes of decompensation within [a] 12 month period, each of at least two weeks duration." (Tr. 311)

The ALJ gave significant weight to the opinions of Dr. O'Brien, Dr. Kessler, and Dr. Pothiawala when determining the plaintiff's RFC. (Tr. 15) The ALJ gave little weight to Reilly's opinions because a therapist is not an "acceptable medical source" pursuant to the regulations, and her opinions were "inconsistent with the findings and opinions of the claimant's other treating and examining sources." (Tr. 15) The plaintiff challenges the ALJ's reasoning and contends that the ALJ failed to evaluate Reilly's opinions adequately.

The magistrate agrees with the Commissioner that the ALJ properly considered the medical records. A therapist such as Reilly is an "other source," not an "acceptable medical source." See 20 C.F.R. § 404.1513(d)(1). Reilly's opinions were noticeably inconsistent with the other opinions in the record. For instance, Dr. O'Brien found that the plaintiff had an "obvious problem" coping with the ordinary demands of a job and with social interaction in a work environment but only a "slight problem" working 8 hours per day, 5 days per week. (Tr. 149-50) Dr. Pothiawala found that the plaintiff's mental impairments no more

7

than mildly restricted his ability to work. (Tr. 316-18) Reilly's findings were more severe. She determined that the plaintiff's problem with social interaction in a work environment was "very serious," which was the highest possible rating and two levels higher than Dr. O'Brien's rating of "obvious." (Tr. 150, 154) Reilly also determined that the plaintiff's problem coping with ordinary job demands was "serious," which was one level higher than Dr. O'Brien's rating of "obvious." (Tr. 149, 153) Reilly opined that the plaintiff had an "obvious problem" working 8 hours per day, 5 days per week, but Dr. O'Brien rated the plaintiff's problem one level lower, as "slight." (Tr. 150, 154) Reilly's severe findings were also apparent in the "mental impairment questionnaire" in which she indicated that the plaintiff was "seriously limited" or "unable to meet competitive standards" in 13 of the 16 "mental abilities and aptitudes needed to do unskilled work." (Tr. 310) Reilly's assessments therefore conflict with Dr. O'Brien's and Dr. Pothiawala's findings.

The Commissioner points out that the record contains additional opinions that cast doubt on Reilly's assessments but were not discussed by the ALJ. The additional opinions were given by Dr. Keven Murphy, who completed an RFC assessment of the plaintiff on September 17, 2007, and Dr. Chang-Wuk Kang, who assessed the plaintiff on April 2, 2008. Both Dr. Murphy and Dr. Kang found that the plaintiff suffered from no more than moderate

8

limitations. (Tr. 156-59, 206-09) Dr. Kang noted that the plaintiff had "minimal limitation in concentration and persistence to complete workdays and workweeks . . . ." (Tr. 209) Therefore, the opinions of Dr. O'Brien, Dr. Pothiawala, Dr. Murphy, and Dr. Kang were consistent with each other, and they were all "acceptable medical sources." Reilly was not an "acceptable medical source," and she was the only professional to opine that the plaintiff's abilities were more limited. In view of this comparison, the magistrate concludes that the ALJ adequately evaluated Reilly and gave legitimate reasons to weigh Reilly's opinion less heavily.

The plaintiff's next argument is that the ALJ failed to consider the plaintiff's obesity and the combined effect of his impairments. As to obesity, the plaintiff is approximately 6 feet 4 inches tall and has weighed as much as 260 pounds. (Tr. 180) Although the record contains some references to the plaintiff being obese, the plaintiff does not identify any documents suggesting that obesity worsened his other impairments or restricted his ability to work. As to the combined effect of the plaintiff's impairments, the ALJ explicitly found that the plaintiff did not have "an impairment or combination of impairments that [met] or medically equal[ed] one of the listed impairments . . . ." (Tr. 13) In determining the plaintiff's RFC, the ALJ stated that she was required to consider "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence . . . ." (Tr. 14) In light of those statements in the ALJ's decision, the magistrate's view is that the ALJ properly considered the combined effect of the plaintiff's impairments and did not consider them only in isolation.

Next, the plaintiff contends that the ALJ failed to analyze his credibility and to consider his testimony regarding pain. Although the ALJ did not use the word credibility in her decision, she clearly assessed the plaintiff's subjective complaints and found them to be inconsistent with the objective medical evidence. The ALJ explained the plaintiff's testimony "that he has a hard time dealing with people, and has a difficult time in stressful situations. He noted that when the stress becomes too much for him, he runs away from the job. In terms of his physical limitations, [he] testified that he was recently diagnosed with osteoporosis and that he has a fractured vertebra. [He] stated that he could walk without difficulty, but noted that he could stand for approximately 30 minutes. In terms of sitting, he stated that he could sit for approximately 1 to 2 hours, with shifting every 5 to 10 minutes. In terms of lifting/carrying, he testified that he has a hard time lifting milk bottles. He testified that he could bend without difficulty and could use his upper extremities without difficulty. He stated that he has used Vicodin and muscle relaxants. He also testified that he must often shift his position

10

to alleviate his back pain." (Tr. 14) After setting forth the plaintiff's testimony, the ALJ assessed the medical opinions and concluded that the plaintiff's RFC allowed him to work. The ALJ therefore implicitly found that the plaintiff's testimony about his limitations and pain did not overcome the medical evidence indicating that he was able to work. The magistrate determines that there is no need for further articulation by the ALJ regarding the plaintiff's credibility.

The plaintiff's last argument is that the ALJ presented three incomplete hypothetical scenarios to the vocational expert, Dr. Steven Sachs. The ALJ first asked Dr. Sachs "to assume an individual of the claimant's age, education, and past work experience, who can only do simple routine [repetitive] tasks involving short, simple instructions in an environment with few, if any workplace changes, where there is limited contact with others. And that includes coworkers, supervisors, and the public." (Tr. 347-48) Dr. Sachs responded that such an individual could work as a hand packer, production worker, or production inspector. (Tr. 348) The ALJ then asked whether "these are environments that don't have many workplace changes," and Dr. Sachs agreed. (Tr. 348) The ALJ's second hypothetical scenario added the requirement of a low stress environment with "no demands for immediate action," "[n]o critical situations," and "[n]othing that is out of the ordinary and would cause a normal individual a degree of stress." (Tr. 349)

11

Dr. Sachs responded that the same three job options existed for such an individual. (Tr. 349) The ALJ's third hypothetical scenario added the requirement of carrying no more than 10 pounds, and Dr. Sachs testified that the same three job options applied to such an individual. (Tr. 350) The plaintiff argues that the ALJ's hypothetical scenarios should have included Dr. O'Brien's assessment that the plaintiff had "an obvious problem" with frustration, social interaction in the workplace, and coping with workplace demands. (Tr. 149-50) However, the ALJ explicitly included "limited contact with others" and "low stress" among the criteria of the hypothetical scenarios. Those criteria took into account Dr. O'Brien's findings. The ALJ's hypothetical scenarios were therefore complete and proper.

Accordingly, the magistrate recommends that the plaintiff's motion to reverse (Dkt. #12) be DENIED and the Commissioner's motion to affirm (Dkt. #15) be GRANTED. Either party may timely seek review of this recommended ruling in accordance with Rule 72 (b) of the Federal Rules of Civil Procedure. Failure to do so may bar further review. 28 U.S.C. § 636 (b)(1)(B); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**IT IS SO ORDERED.**

  **Dated at Hartford, Connecticut, this 30th day of August, 2010.**

              <u>**/s/ Thomas P. Smith**</u>
              **Thomas P. Smith**
              **United States Magistrate Judge**